IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DEMETRIUS T. ROGERS,            )
                                )
        Petitioner,              )
                                )
                                )       CIV-13-453-M
v.                              )
                                )
HASKELL HIGGINS, Warden,         )
                                )
        Respondent.[1]           )


SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Respondent has responded to the Petition and filed the relevant state court records. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

On June 27, 2011, Petitioner was charged in the Oklahoma County District Court with the offenses of Making Lewd or Indecent Proposals to a Child Under Sixteen (16) (count

---

[1] Petitioner states that he is confined at the Jim E. Hamilton Correctional Facility ("JHCC"). The state officer having custody of the applicant is the properly-named respondent in a federal habeas action. Rule 2, Rules Governing Section 2254 Cases in the United States District Courts. Petitioner named the State of Oklahoma as the Respondent in this action. However, the Warden of JHCC, Mr. Haskell Higgins, is the correct Respondent. Thus, Mr. Higgins has been substituted as the Respondent in this habeas proceeding. Fed. R. Civ. P. 25(d)(1).

one) and Soliciting Sexual Conduct with a Minor (count two). Petitioner was arrested on these charges and appeared before a judge in Oklahoma County District Court on June 30, 2011, at which time bond was set and a public defender was appointed to represent Petitioner. Response, Ex. 2, at 18 (docket sheet in State of Oklahoma v. Demetrius Tomaz Rogers, Case No. CF-2011-3547).

On July 7, 2011, Petitioner's court-appointed attorney, Mr. Denecke, and the prosecutor appeared for a preliminary hearing conference, and the conference was continued to July 18, 2011, by agreement. On July 15, 2011, the charging information was amended by the prosecution to add five new charges involving the same victim, including Rape in the First Degree (count three), Rape in the Second Degree (count four), Rape in the Second Degree (count five), Rape in the Second Degree (count six), and Indecent or Lewd Acts with a Child Under Sixteen (16) (count seven). Id. at 17-18.

On July 29, 2011, Petitioner's bond was reset to a much higher amount because "counts 3,4,5,6 & 7 were added." Id. at 18. A preliminary hearing date concerning the charges was scheduled for September 28, 2011.

On that date, Petitioner appeared in court with his attorney and entered a negotiated guilty plea to each of the seven counts. Response, Ex. 1, at 32-39 (Plea of Guilty and Summary of Facts Part A: Findings of Fact; Acceptance of Plea)("SOF"). The Summary of Facts completed and signed by Petitioner and his counsel reflects that Petitioner entered the plea with full knowledge of the consequences of the plea and that the plea was voluntarily entered. Consistent with the plea agreement, Petitioner was sentenced to a 10-year

suspended sentence on each count except for the first five years, with the sentences to be served concurrently. Response, Ex. 1, at 10-14 (Plea of Guilty Part B: Sentence on Plea); Response, Ex. 2, at 19 (docket sheet).

On September 21, 2012, Petitioner filed an application for post-conviction relief in the district court. Response, Ex. 1, at 8. In his application, Petitioner alleged that he was denied effective assistance of counsel because his court-appointed counsel "failed to communicate" to Petitioner "the State's first recommendation of 90 days in the County Jail followed by 5 years suspended sentence. Counsel Denecke informed the District Attorney that I turned down the recommendation because I didn't want to sit in jail," and, inconsistently, that "the offer later expired followed by amended charges and a new recommendation." Response, Ex. 1, at 6.

Relying on the Supreme Court's 2012 decisions in <u>Missouri v. Frye</u>, __ U.S. __, 132 S.Ct. 1399 (2012), and <u>Lafler v. Cooper</u>, __ U.S. __, 132 S.Ct. 1376 (2012), Petitioner asserted that his attorney "stated [in a letter after the sentencing] that he conveyed the offer to [Petitioner] on the 8th of July 2011, but what I recall is that on that date Counsel only explained that he continued the court date for a later time." <u>Id.</u> Petitioner also alleged that his attorney failed to communicate with him prior to the time of the plea and advised Petitioner after the charging information had been amended that he should plead guilty because "my race would play a factor if I chose to proceed to trial, which is a direct violation of Civil Rights Statues [sic]. . ., and it's clear that counsel Denecke was in direct violation of that statue [sic] by telling his client to plea due to race." <u>Id.</u> Further, Petitioner alleged that

3

"[h]ad Counsel Denecke 'properly' informed his client of the first recommendation, I would have pleaded to the first set of charges rather then [sic] the amended charges." Id. at 7. Instead, he alleges that Mr. Denecke "failed to properly communicate the [first] offer [and] the offer later expired followed by amended charges and a new [plea] recommendation." Id. at 6.

The district court denied the application on the basis of procedural default due to Petitioner's failure to raise the claims in a timely application to withdraw his plea. Response, Ex. 3. Petitioner appealed the decision. Response, Ex. 4. The Oklahoma Court of Criminal Appeals ("OCCA") affirmed the district court's denial of post-conviction relief. Response, Ex. 5 (Demetrius T. Rogers v. The State of Oklahoma, Case No. PC-2012-1069 (Okla. Crim. App. April 18, 2013)(unpublished order)). The OCCA found that Petitioner had procedurally defaulted his ineffective assistance of counsel claim because he failed to raise the claim in an appeal and that he provided insufficient reason for the failure.

Alternatively, the OCCA denied Petitioner's Sixth Amendment claim on its merits. The court stated in its decision that Petitioner "claim[ed] that counsel failed to advise him of a proffered plea agreement of five (5) years, with all but the first 90 days suspended" and "allege[d] had he been so advised, he would have accepted the State's plea offer." Id. at 1-2. The OCCA found, however, that "[t]he record is devoid of anything other than Rogers's self-serving statements that he was not advised of this alleged plea offer. Rogers also presents no evidence that the Supreme Court's decisions in *Frye* and *Lafler* are to be applied retroactively, even assuming those cases could be applied to Rogers's condition." Id. at 4.

Citing the two-part test set out in Strickland v. Washington, 466 U.S. 668 (1984), for evaluating claims of ineffective assistance of counsel, the OCCA found that Petitioner had not shown that his counsel provided deficient representation or that the result of the case would have been different but for his counsel's alleged ineffective assistance. Id. at 4-5.

Taking judicial notice of the Court's own relevant records, in a previous 42 U.S.C. §1983 action filed in this Court, Petitioner asserted that Mr. Denecke "misled me by telling me that he could get me probation [and] not to take a plea agreement. . . ." Complaint, Rogers v. Denecke, Case No. CIV-12-373-R, at 3. Inconsistently, Petitioner alleged that Mr. Denecke advised Petitioner to accept a plea agreement rather than proceed to trial because of his race, even though Mr. Denecke "had the requisite knowledge that I wanted to go to trail [sic] and appeal my conviction, but instead acted in cahoots with the [prosecutor]." Id., att. 2, at 2. The § 1983 action was dismissed for failure to state a plausible claim, and the dismissal was affirmed on appeal. Rogers v. Denecke, No. 12-6198 (10th Cir. Oct. 23, 2012)(unpublished order and judgment).

Petitioner recently filed a second 42 U.S.C. § 1983 action in this Court against the Oklahoma Bar Association and a bar official in which Petitioner alleged that

> Mr. Denecke was given a recommendation from the State of Oklahoma on the 7th day of July 2011 in which his client (Demetrius Rogers) was not present at the hearing. A recommendation of 90 days in the county jail was given to Mr. Denecke and instead of him informing his client of the offer Mr. Denecke chose to continue the hearing without first allowing his client to accept or deny the offer. 1-2 day [sic] later Mr. Denecke then informed his client at the Oklahoma County Jail that he continued the hearing for another date and time, but

5

> mentioned nothing about an offer being made. On the morning of the September 28, 2011 Mr. Denecke then spoke to his client again and informed him that he needed to plea[d] guilty to the charges against him, because if he chose to proceed to trail [sic] his race would be used against him, and that he had no chance of winning the case at trial. Plaintiff Rogers knew that the conduct was not correct but could not prove what was said and done, but took the advice of his attorney at the time due to fear of facing life in prison at a very young age.

Complaint, <u>Rogers v. Oklahoma County Bar Association</u>, Case No. CIV-13-121-F, at 1. Based on the bar association's alleged refusal to investigate Petitioner's grievance against Mr. Denecke, Petitioner alleged that Mr. Denecke and the bar official conspired to deprive Petitioner of his due process and equal protection rights. The action was dismissed without prejudice for lack of jurisdiction and as frivolous.

II. <u>Petitioner's Claim of Ineffective Assistance of Defense Counsel</u>

In his Petition, Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of counsel. As supporting facts, Petitioner alleges that during "the first hearing set for July 7, 2011, Petitioner Rogers was not present during the court proceedings while his defense counsel, Mr. Denecke, was in communication with the District Attorney with a pending offer." Petition, at 2. He alleges the prosecutor initially "offered a plea agreement of 90 days in the County Jail with a five year suspended" sentence, but that Mr. Denecke did not "request[ ] a recess to either speak with [his] client of the offer or bring him before the courts to accept or deny the offer." Rather, he alleges Mr. "Denecke continued the court proceedings without the consent and/or knowledge of his client" and Mr. Denecke "informed the district attorney that his client refused the offer while not even present in court

and never heard of the offer until the next day, over 24 hrs. [sic]." Petition, at 2.

Petitioner alleges that the prosecution amended the information to add new charges "and a new offer was given," which he accepted. Id., at 2-3. He alleges, however, that his "trial counsel was ineffective when he continued the hearing with a pending offer on the table before first consulting with his client and for not timely communicating the offer." Id.

III. Standard of Review

Petitioner raised an ineffective assistance claim in his post-conviction appeal, and the OCCA denied the claim on its merits. Consequently, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard for reviewing this claim. Under the AEDPA, a federal court cannot grant habeas relief unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of

7

Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court precedent incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted). See Cullen v. Pinholster, 563 U.S. __, 131 S.Ct. 1388 (2011)(when considering merits of federal habeas claim review is generally limited to record before the state court that adjudicated the claim on its merits).

A state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

IV. Analysis

"The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging his guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel." Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998). First, "'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Hill v. Lockhart, 474 U.S. 52, 57

8

(1985)(quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984)). "To prove deficient performance, [Petitioner] must overcome the presumption that counsel's conduct was constitutionally effective....For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." <u>Boyd v. Ward</u>, 179 F.3d 904, 914 (10th Cir. 1999). "[R]easonable competence in representing the accused" is the standard, and under this standard "substantial deference must be accorded to counsel's judgment." <u>Premo v. Moore</u>, __ U.S. __, 131 S.Ct. 733, 742 (2011).

"Even if a defendant shows that particular errors of counsel were unreasonable,....the defendant must show that they had an adverse effect on the defense." <u>Strickland</u>, 466 U.S. at 693. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

"'[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel.'" <u>Frye</u>, 132 S.Ct. at 1406 (quoting <u>Padilla v. Kentucky</u>, 559 U.S. __, 130 S.Ct. 1473, 1486 (2010)). In <u>Frye</u>, the Court did not define all of the duties of defense counsel during plea bargaining but held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Id.</u> at 1408. Consequently, it is "deficient performance" when defense counsel does not communicate a formal plea offer to the defendant. <u>Id.</u> at 1409.

As to the issue of whether prejudice resulted from this "breach of duty," the Court

held in Frye that

> [t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.

Id. To show prejudice in this context, the defendant

> must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea . . . nor a federal right that the judge accept it.

Id.

The Tenth Circuit Court of Appeals recently held that Frye and its companion decision, Lafler, both of which concern the Sixth Amendment right to the effective assistance of counsel in the plea bargaining context, do not establish new rules of constitutional law. See In re Graham, 714 F.3d 1181, 1182-1183 (10th Cir. 2013)(per curiam). Hence, these decisions are not retroactively applicable to cases on collateral review. Id. Petitioner must therefore demonstrate both cause and prejudice under the clearly-established Strickland standard.

In this case, Petitioner alleges in his reply brief that he was "informed of the [initial plea] offer [on] July 8, 2011, and learned that his Defense Counsel filed for an extension

without . . . allowing [Petitioner] to accept or deny the offer." Petitioner's Objection/Response (Doc. # 15), at 2. Petitioner then asserts in the reply brief that "he did know that his attorney informed the D.A. that he refused the offer . . . until after he filed a Bar Complaint against Mr. Denecke and it was alleged Petitioner refused the offer." Id. He also asserts in the reply brief that he "never had the adequate opportunity to accept or deny the offer due to counsel requesting an extension before he informed his client of the offer." Id. at 3. Petitioner states in the same brief that he "did not" refuse the initial plea offer after he learned of it on July 8, 2011, and that "the state amended charges before the offer could be accepted." Id. at 2, 4. Finally, to confuse the matter even further, Petitioner asserts that "the record is clear that no offer was refused, the state amended charges before the offer could be accepted." Id. at 4.

In an effort to make better sense of Petitioner's inconsistent ineffective assistance allegations both in this Court and in his state post-conviction proceeding, it is necessary to review the record that was before the OCCA in Petitioner's post-conviction appeal.

With Petitioner's post-conviction appellate brief, entitled "Notice of Post Conviction Appeal," filed in the OCCA, Petitioner provided the OCCA copies of letters he purportedly sent to Mr. Denecke during the state criminal proceeding. In the first of these letters dated July 10, 2011, which would have been two days after Petitioner learned of the initial plea offer, Petitioner stated that he "was not in the wrong. . . . I was also hoping they would also drop the felony also to a lower charge so that I could go to the military and save our country. I hope that I could also get a bond while we fight this case to see my son [and] my family.

11

. . . We go to court on the 18th." Response, Ex. 4, at 33. This letter indicates Petitioner knew about the initial plea offer and had determined he would not accept the offer because he wanted to join the military.

In the second of these letters dated July 20, 2011, which would have been five days AFTER the prosecution amended the information to add the four new charges, Petitioner stated "I was just checking on the status of things with my case. I am also letting you know that I will be more than willing to do the 10 yrs probation." Id. at 32.

In the last of these letters dated July 27, 2011, Petitioner states that he wanted to "make the D.A. an offer" and "I want to try and make a deal way befor[e] Court. I really do not want to go to the [preliminary] hearing so this is why I have been trying to contact you . . . . I am still willing to offer 3-6 months County time including [the] month and a half I have been here plus the 10 yrs probation." Id. at 34.

All of these letters indicate Petitioner's desire to forego a trial and enter a negotiated guilty plea as well as his awareness of ongoing plea negotiations between his attorney and the prosecution. In its decision in Petitioner's post-conviction appeal, the OCCA summarized the statements in a letter from Mr. Denecke to Petitioner that Petitioner submitted with his post-conviction appeal pleadings. However, the court made no factual findings concerning the plea negotiations and concluded that Petitioner had not demonstrated deficient performance by his defense counsel or prejudice under Strickland's controlling standard.

In his pleadings filed in this Court, Petitioner admits that he became aware of the

initial plea offer made by the prosecution the day after it was presented to Mr. Denecke. Petitioner also concedes that he did not formally accept or reject the offer before the charging information was amended. See Petitioner's Objection/Response, at 3 (asserting the offer was "pending" at the time Mr. Denecke communicated the offer to Petitioner on July 8, 2011) and 4 (asserting that "the state amended charges before the offer could be accepted").[2]

However, even assuming Mr. Denecke provided deficient performance by failing to timely inform Petitioner of the initial plea offer, Petitioner cannot demonstrate prejudice as a result of the alleged deficient performance by counsel.

To established prejudice under Strickland, a habeas petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the guilty plea context, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. In this case, the allegedly ineffective representation led to the expiration of an initial plea offer, although Petitioner admits he was aware of the plea offer within 24 hours after it was presented to his defense attorney. He does not allege that he

---

[2] The fact that Mr. Denecke agreed on July 7, 2011, to reschedule a pretrial conference in the case to a later date, without Petitioner's knowledge or presence, does not amount to deficient performance. Such pretrial decisions are commonly made by defense attorneys, and the pretrial conference is not a critical hearing at which Petitioner's presence was required to assure fairness of his criminal proceeding. Moreover, Petitioner's assertion that "even when Petitioner wanted to accept the [initial plea] offer he still could have not due to the extension filed by his Counsel and the hearing was pushed out for another 7-8 days" is also irrelevant to the ineffective assistance issue before the Court, as a court "hearing" is not necessary for acceptance or rejection of a plea offer. Petitioner's Objection/Response, at 2.

13

informed his attorney he wanted to accept the plea offer. He does admit, however, that the prosecution amended the information to charge Petitioner with five additional criminal offenses BEFORE the initial plea offer was accepted.

Because the record shows that the prosecution amended the information only eight days after the initial plea offer was allegedly made to Mr. Denecke to charge Petitioner with five additional criminal offenses, for a total of seven charges, all involving sexual offenses involving the same minor victim, there is no reasonable probability that the prosecution or the trial court would have accepted or implemented the initial plea offer. Thus, Petitioner has not demonstrated that the OCCA's decision was contrary to or unreasonably applied the prevailing Strickland standard.

Petitioner admits he "never stated that he wanted to go to trial," and his letters addressed to Mr. Denecke during the ongoing state criminal proceeding reflect that Petitioner desired to enter a negotiated plea and avoid a trial. Petitioner contends in his reply brief that Mr. Denecke provided constitutionally ineffective assistance by advising Petitioner "his race would play a factor a[t] trial" during discussions with Petitioner about entering a guilty plea or proceeding to trial. Petitioner's Objection/Response, at 3.

It is not deficient performance for counsel to make a studied assessment of the evidence in his or her client's case and then advise the client as to the merits of the case and other factors that a jury might weigh in favor of guilt or innocence, including, unfortunately but often realistically, the race of the alleged perpetrator and victim. See Strickland, 466 U.S. at 689 (recognizing "[t]here are countless ways to provide effective assistance in any

14

given case," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable processional assistance").

Assuming the truth of Petitioner's allegation in his reply brief that Mr. Denecke advised him that "his race would play a factor a[t] trial" in connection with Petitioner's decision whether or not to enter a guilty plea, Petitioner has not shown that the OCCA's decision, in which the court found that Mr. Denecke's performance was not deficient, was contrary to or an unreasonable application of Strickland's governing standard. Petitioner faced seven criminal charges, one of which could result in a sentence of life imprisonment without parole and the remainder of which could result in 15 or 20 year sentences. See Response, Ex. 2, at 34 (SOF description of range of punishment for each charged offense). The advantageous plea agreement accepted by the trial court resulted in Petitioner being sentenced to an aggregated five year term of imprisonment followed by a five year suspended sentence. Moreover, Petitioner repeatedly expressed his desire to enter a negotiated plea of guilty in his correspondence with his attorney during the pendency of the criminal proceeding. Consequently, Petitioner is not entitled to habeas relief concerning his convictions and sentences entered in Case No. CIV-2011-3547.

RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with

15

the Clerk of this Court by ___September 25th___, 2013, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___5th___ day of ___September___, 2013.

/s/ Gary M. Purcell
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE